IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| THOMILA SUE SMITH, | : | CASE NO. 23-62823-JRS |
| *AKA THOMILA SUE STEGMAN* | : | |
| *AKA SUE SMITH* | : | JUDGE: JAMES R. SACCA |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| FREEDOM MORTGAGE CORPORATION, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| THOMILA SUE SMITH, | : | |
| *AKA THOMILA SUE STEGMAN* | : | |
| *AKA SUE SMITH* | : | |
| NANCY J. WHALEY, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that FREEDOM MORTGAGE CORPORATION has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an order modifying the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at <u>9:00 A.M.</u> on <u>August 20, 2024</u> in Courtroom **1404**, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then

you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated this:   07/10/2024

*/s/ Ciro A Mestres*

Ciro A Mestres, GA BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6516
Ciro.Mestres@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| THOMILA SUE SMITH, | ) | CASE NO. 23-62823-JRS |
| *AKA THOMILA SUE STEGMAN* | ) | |
| *AKA SUE SMITH* | ) | JUDGE: JAMES R. SACCA |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| FREEDOM MORTGAGE CORPORATION, | ) | CONTESTED MATTER |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| THOMILA SUE SMITH, | ) | |
| *AKA THOMILA SUE STEGMAN* | ) | |
| *AKA SUE SMITH* | ) | |
| NANCY J. WHALEY, Trustee | ) | |
| | ) | |
| Respondents. | ) | |

<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest. Said real property is security for a promissory note, and is commonly known as 2626 Harman Park Court, Duluth, GA 30097 (the "Property").

3.

Debtor's Amended Schedule A/B values the Property at $620,100.00. Upon information and belief, Movant is not aware of any other liens against the Property other than a Secretary of Housing and Urban Development in the amount of $89,806.00 held by U.S. Department of Housing pursuant to Debtor's Schedule D.

4.

Debtor executed a Subordinate Mortgage on November 19, 2021 in the amount of $52,447.39 in favor of the Secretary of Housing and Urban Development consenting to a mortgage lien being placed on the Property and will come due when the Borrower pays the loan off, sells or refinances. On September 6, 2022, and August 28, 2023, Debtor executed another Subordinate Mortgages in the amount of $22,391.37 and $14,967.75 in favor of the Secretary of Housing and Urban Development, consenting to a mortgage lien being placed on the Property and will come due when the Borrower pays the loan off, sells or refinances.

5.

Debtor has defaulted in making payments which have come due since this case was filed. As of July 5, 2024, Debtor is delinquent for three (3) payments of $3,037.43 each (May 1, 2024 to July 1, 2024), less a suspense balance of $45.39, for a total post-petition delinquency of $9,066.90, pursuant to the terms of the Loan Modification Agreement. In addition, Movant has also incurred post-petition Bankruptcy fees of $950.00, as disclosed on the Notice of Post-petition Mortgage Fees, Expenses, and Charges filed April 19, 2024.

6.

The unpaid principal balance, as of July 5, 2024, is $317,907.49, and interest is due thereon in accordance with the Loan Modification Agreement.

7.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

8.

Because the Security Deed so provides, Movant is entitled to its attorney's fees.

9.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/ Ciro A Mestres*

Ciro A Mestres, Georgia BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6516
312-803-9663
Ciro.Mestres@mccalla.com

BANKRUPTCY CASE NO. 23-62823-JRS

CHAPTER 13

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July, 2024, I electronically filed the foregoing Motion for Relief from Stay and Notice of Hearing using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Rushi D. Patel, Nancy J. Whaley

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid or overnight mail on the following parties at the address shown for each.

Thomila Sue Smith
2626 Harman Park Court
Duluth, GA 30097

United States of America
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Dept. of Housing and Urban Development
Five Points Plaza Building
40 Marietta Street
Atlanta, GA 30303

United States of America
c/o United States Attorney
Richard B. Russell Federal Building
75 Ted Turner Dr. SW
Suite 600
Atlanta, GA 30303-3309

Dated:07/10/2024

*/s/ Ciro A Mestres*
Ciro A Mestres
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076-2102

| Debtor Name: | Thomila Sue Smith | | | | |
|---|---|---|---|---|---|
| BK Case Number: | 23-62823 | | | | |
| Filing Date: | 12/28/23 | | | Completed by: | |
| Post First Due: | 01/01/24 | | | Completed Date: | 7/5/2024 |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance |
| **Loan Modification completed 12/22/23 - 1st payment due post Loan Mod 3/1/24** | | | | $ - | $ - |
| | | | | $ - | $ - |
| 03/01/24 | 5/1/2024 | $3,037.43 | $2,992.04 | $ 45.39 | $ 45.39 | short payment applied |
| 04/01/24 | 5/14/2024 | $3,037.43 | $3,037.43 | $ - | $ 45.39 |
| 05/01/24 DUE | | | $3,037.43 | $ (3,037.43) | $ (2,992.04) |
| 06/01/24 DUE | | | $3,037.43 | $ (3,037.43) | $ (6,029.47) |
| 07/01/24 DUE | | | $3,037.43 | $ (3,037.43) | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |
| | | | | $ - | $ (9,066.90) |

NOTE

LOAN #:
MIN
MAX code:

December 11, 2018
[Date]

Duluth,
[City]

Georgia
[State]

2626 Harman Park Court, Duluth, GA 30097
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$305,250.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **The Federal Savings Bank, a Federal Savings Bank**.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.375 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1st** day of each month beginning on **February 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **January 1, 2049,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **300 North Elizabeth Street, Suite 3E**
**Chicago, IL 60607**
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$1,524.07.**

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

**MULTISTATE FIXED RATE NOTE** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.    Page 1 of 3

Initials: _____

FHA3200NOT   0216
FHA3200NOT (CLS)

LOAN #:

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**THOMILA SMITH**

**Lender: The Federal Savings Bank**
**NMLS ID:**
**Loan Originator: Carl Edmund Pattillo**
**NMLS ID:**

[Sign Original Only]

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    **Form 3200 1/01**
Modified for FHA 9/15 (rev. 2/16)                                                    Initials: _____
Ellie Mae, Inc.                                          Page 2 of 3                          FHA3200NOT  0216
                                                                                      FHA3200NOT (CLS)

LOAN #

**PAY TO THE ORDER OF:**
**Without Recourse this** ___
**Day of** December, 2___
**The Federal Savings Bank** a Federal Savings Bank

BY: Julian He___

TITLE: officer

[Sign Original Only]

**MULTISTATE FIXED RATE NOTE** Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)                                                    Initials:
Ellie Mae, Inc.                                    Page 3 of 3                        FHA3200NOT  10/16
                                                                                      FHA3200NOT (CLS)

Pay to the order of

without recourse this ____ day of _____ 20 ____
Freedom Mortgage Corporation

Stanley C. Middleman
President/Chief Executive Officer

DEED BOOK 56302 Pg 00701
12/17/2018 02:41:40 PM Pgs: 14 Fees: $ 36.00
ITax: $916.50
Richard T. Alexander, Jr., Clerk of Superior Court
Gwinnett County, Georgia

Ganek PC
Mimi McCain Esq.
675 N. Highland Ave NE Suite 400
Atlanta, GA 30306
678-606-9868

When recorded, return to:
The Federal Savings Bank
Attn: Final Document Department
300 North Elizabeth Street, Suite 3E
Chicago, IL 60607

Title Order No.:
Escrow No.:
LOAN #:

—————————————— [Space Above This Line For Recording Data] ——————————————

## SECURITY DEED

FHA Case No.

MIN
MERS PHONE #: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated **December 11, 2018,** together with all Riders to this document.

(B) "Borrower" is **THOMILA SMITH, A MARRIED WOMAN.**

Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is  **The Federal Savings Bank.**

Lender is  **a Federal Savings Bank,**                                                    organized and existing
under the laws of  Kansas.
Lender's address is  300 North Elizabeth Street, Suite 3E, Chicago, IL 60607

(E) "Note" means the promissory note signed by Borrower and dated  **December 11, 2018.**        The Note states that Borrower owes Lender  **THREE HUNDRED FIVE THOUSAND TWO HUNDRED FIFTY AND NO/100** * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.  **$305,250.00**                   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **January 1, 2049.**

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)

Ellie Mae, Inc.                                                    Page 1 of 9

Initials:

GAEFHA15DE  0316
GAEDEED (CLS)

LOAN #: [REDACTED]

(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☒ Planned Unit Development Rider
☒ Other(s) [specify]
**Waiver of Borrower's Rights Rider, Closing Attorney Affidavit**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County                  of  **Gwinnett**
                    [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: [REDACTED]

which currently has the address of  **2626 Harman Park Court, Duluth,**
                                                                                                        [Street] [City]

**Georgia  30097**                    ("Property Address"):
            [Zip Code]

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                                Page 2 of 9                    Initials: [signature]
                                                                                                                GAEFHA15DE  0315
                                                                                                                GAEDEED (CLS)

LOAN # ███████

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section, Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

LOAN # ██████

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                       Page 4 of 9

Initials: _____
GAEFHA15DE  0316
GAEDEED (CLS)

LOAN # ▮▮▮▮▮

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                         Page 5 of 9                    Initials: ▮▮

GAEFHA15DE  0316
GAEDEED (CLS)

LOAN # ███████

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judg-
ment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights
under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided
in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes
forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security
Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest
in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order
provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modifi-
cation of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor
in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.
Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to
extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason
of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in
exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities
or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude
the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees
that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security
Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage,
grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not person-
ally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower
can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument
or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations
under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits
under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security
Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument
shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default,
for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but
not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized
by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable
Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums
already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to
make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund
reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly
payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund
made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of
such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.
Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when
mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any
one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice
address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.
Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting
Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.
There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender
shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has
designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be
deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument
is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under
this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal
law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security
Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly
allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against
agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with
Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given
effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter
words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and
(c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the
Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is
the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural
person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may
require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be
exercised by Lender if such exercise is prohibited by Applicable Law.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 6 of 9
GAEFHA15DE  0316
GAEDEED (CLS)

Initials: _____

LOAN # ▮▮▮▮▮

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn–St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

Initials: _____

LOAN #: ▮▮▮▮▮▮

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 24, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**27. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**28. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3011 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 8 of 9    GAEFHA15DE   0315
GAEDEED (CLS)

Initials: _____

LOAN # ▮▮▮▮

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____    12/11/18 _____ (Seal)
THOMILA SMITH                                      DATE

_____
**Unofficial Witness**

Notary Public, _____Georgia_____

DeKalb  ~~GWINNETT~~ County

Lender: The Federal Savings Bank
NMLS ID: ▮▮▮▮
Loan Originator: Carl Edmund Pattillo
NMLS ID ▮▮▮▮

Initials: _____
GAEFHA15DE  0316
GAEDEED (CLS)

**DEED B: 60040 P: 60696**
06/27/2022 10:53 AM Pgs: 2 Fees: $25.00

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: ████████████

Recording Requested By:  Freedom Mortgage Corporation
When Recorded Return To: Lateef Smith (IN), Freedom Mortgage Corporation, 20 Lake Center Drive, Marlton, NJ
08053

## CORPORATE ASSIGNMENT OF SECURITY DEED

Gwinnett, Georgia
Freedom Mortgage Corporation#█████████"SMITH,"

MI██████████SIS #: 1-888-679-6377

Date of Assignment: April 14th, 2022
Assignor: Mortgage Electronic Registration Systems, Inc., as grantee, as nominee for The Federal Savings Bank., its
successors and assigns at P.O. Box 2026, Flint, MI 48501-2026
Assignee: Freedom Mortgage Corporation at 907 Pleasant Valley Ave, Ste3, Mount Laurel, NJ 08054

Executed By: THOMILA SMITH, A MARRIED WOMAN. To: Mortgage Electronic Registration Systems, Inc., as
grantee, as nominee for The Federal Savings Bank., its successors and assigns
Dated: 12-11-2018 Recorded: 12-17-2018 in Book/Reel/Liber 56312 Page/Folio 00701  In the County of Gwinnett,
State of Georgia.

Property Address: 2626 HARMAN PARK COURT, DULUTH, GA  30097

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security
Deed having an original principal sum of $305,250.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to
the terms contained in said Security Deed.
Mortgage Electronic Registration Systems, Inc., as grantee, as nominee for The Federal Savings Bank., its
successors and assigns
On April 14th, 2022

By: _____
HOWARD D WIGGINS II, Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

_Brenda Rostrom_
Brenda Rostrom

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

NOTARY WITNESS

STATE OF New Jersey
COUNTY OF Burlington

Subscribed and sworn to (or affirmed) before me on April 14th, 2022, by HOWARD D WIGGINS II, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

Carla Johnson

Notary Expires: 8/16/2026

DEED BOOK 60800 P 00086
03/29/2023 10:18 AM Pgs: 8 Fees: $25.00
ITax: $0.00
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: ████████████

---

Investor Loan # ████████

**Recording Requested By:**
Freedom Mortgage Corporation
907 Pleasant Valley Avenue
Mount Laurel, NJ 08054

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect Document Solutions
6860 North Argonne Street, Unit A
Denver, CO 80249
APN/Tax ID: ████████
Recording Number: ████████

This document was prepared by Freedom Mortgage Corporation, Michele Rice, 10500 Kincaid
Drive, Suite 111, Fishers IN 46037-9764, (855) 690-5900

_____ Space Above This Line For Recording Data _____

| | |
|---|---|
| Original Principal Amount: $305,250.00 | Loan Number: ████████ |
| Unpaid Principal Amount: $289,929.93 | FHA Case No.: ████████ |
| New Principal Amount: $285,745.02 | |
| Consideration Amount (For Recording Purposes Only): $0.00 | |

## LOAN MODIFICATION AGREEMENT
### (FHA-Insured) (FHA COVID-19 Combination Partial Claim and Loan Modification)

This Loan Modification Agreement ("Agreement") between **THOMILA SMITH, A MARRIED WOMAN** whose address is 2626 HARMAN PARK CT, DULUTH, GA 30097 ("Borrower" or "I")[1] and **FREEDOM MORTGAGE CORPORATION** whose address is 907 Pleasant Valley Avenue, Mount Laurel, NJ 08054 ("Lender"), is given on 08/19/2022, and amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), made by **THOMILA SMITH, A MARRIED WOMAN** to MERS AS NOMINEE FOR THE FEDERAL SAVINGS BANK for **$305,250.00** and interest, dated 12/11/2018 and recorded on Date 12/17/2018 in Book or Liber 56312, at page(s) 00701, or as Document/Instrument Number _____, in the Records of Gwinnett, GEORGIA, and (2) the Note bearing the same date as and secured by the Security Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at 2626 HARMAN PARK CT DULUTH, GA 30097. *See Exhibit A for Legal Description*

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information designed to help you understand the modified mortgage terms that are being offered to you. Lender is required to provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage in a timely manner to

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "Borrower" or "I." For purposes of this document, words signifying the singular (such as "Borrower" or "I") shall include the plural (such as "Borrowers" or "we") and vice versa where appropriate.

Page 1 of 7

enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 below continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents. If there is more than one borrower or mortgagor executing this document, each is referred to as "I". Words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

1. **My Representations.** I certify, represent to Lender, and agree as follows:

   A. I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

   B. I am not a borrower on any other FHA-insured mortgage.

   C. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

   D. If I received a discharge in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the required subordinate mortgage loan (also called a Partial Claim Note and Security Instrument). I have reviewed and approved the terms of such subordinate loan.

   B. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

   C. Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

   D. The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred.

3. **The Modification.** If all of my representations in Section 1 above continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on 09/01/2022 (the "Modification Effective Date") and all unpaid late charges, penalties, and fees that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

   A. The new Maturity Date will be: 09/01/2062

   B. The new principal balance of my Note will be $285,745.02 (the "New Principal Balance"). In servicing your loan, the Lender may have incurred third-party fees or charges that were not included in the terms of this Agreement. If so, these fees and charges will appear on your monthly statement under "Fees and Charges." These fees and charges will not accrue interest or late fees. You may pay these fees and charges at any time. If not previously paid, you must pay these fees and charges at the earliest of (1) the date you sell or transfer an interest in the Property, (2) the date you pay the entire New Principal Balance, or (3) the Maturity Date.

   C. I promise to pay the New Principal Balance, plus interest, to the order of Lender.

   D. The annual interest rate on the New Principal Balance will be 5.500%, beginning 09/01/2022, both before and after any new default. This fixed interest rate will remain in effect until the principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

   E. On 10/01/2022 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $2,323.92 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $1,473.79, plus the current required escrow payment of $850.13. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

   F. I will be in default if I do not comply with the terms of the Modified Loan Documents.

4. **Additional Agreements.** Lender and I agree to the following:

   A. I accept the risks of entering into this Agreement. These risks include (but are not limited to)

      (1) The subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The subordinate lien may also make it more difficult to get additional subordinate lien financing.

      (2) My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

B.  I authorize Lender to attach an Exhibit A to this loan modification, which will include a
Legal Description, recording information of the original security instrument, and any
other relevant information required by a County Clerk (or other recordation office) to
allow for recording if and when Lender seeks recordation.

C.  All persons who signed the Loan Documents or their authorized representative(s) have
signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the
borrower and co-borrower are divorced and the Property has been transferred to one
spouse in the divorce decree, in which event the spouse who no longer has an interest in
the Property need not sign this Agreement (although the non-signing spouse may
continue to be held liable for the obligation under the Loan Documents); or (3) Lender
waived this requirement in writing.

D.  This Agreement supersedes the terms of any modification, forbearance, trial period plan,
or workout plan that I entered into with Lender before the date of this Agreement.

E.  All terms and provisions of the Loan Documents, except as expressly modified by this
Agreement, remain in full force and effect and I will comply, with all covenants,
agreements, and requirements of the Loan Documents, including (but not limited to) my
agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds,
and all other similar obligations, the amounts of which may change in accordance with
the terms of my Modified Loan Documents.

F.  The Modified Loan Documents are duly valid, binding agreements, enforceable in
accordance with their terms and are hereby ratified and confirmed.

G.  I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title
insurance product(s) and/or any subordination agreement(s) that are necessary or required
by Lender's procedures and/or the Modification to ensure that the Mortgage, as modified
by this Agreement, is in first-priority lien position and is fully enforceable. The terms of
this Agreement will not become effective, and this Agreement will be null and void, if
Lender does not receive such title endorsement(s), title insurance product(s), and/or
subordination agreement(s) on or before the Modification Effective Date.

H.  I know that I am only entitled to loss mitigation terms that comply with the Modification.
Therefore, if Lender discovers any error in the terms of this Agreement or in the required
subordinate mortgage loan, I authorize the Lender to advise me of the error. If I do not
accept the corrected terms, at Lender's option, this Agreement becomes void and of no
legal effect. If I accept the corrected terms, I will execute and promptly return to Lender
the revised and additional documents that will (1) consummate the intended terms and
conditions of this Agreement and/or (2) correct the terms and conditions of this
Agreement (a "Corrected Agreement"). If I do not sign and deliver a Corrected
Agreement or any additional document required by Lender to comply with the
Modification, the terms of the original Loan Documents shall continue in full force and
effect, such terms will not be modified by this Agreement, and I may not be eligible for
the Modification.

Page 4 of 7

I.   Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I consent to the disclosure of my Personal Information and the terms of this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Modification, and (3) any HUD-certified housing counseling agency.

J.   If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents").

I will deliver the Replacement Documents to Lender within ten days after I receive Lender's written request for such Replacement Documents.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered on the ___6___ day of

___September___, 20_22_ in the presence of:

_____Nathan Smith_____
Unofficial Witness

_____Nathan Smith_____
Unofficial Witness – Printed Name

| Sign here to execute |
| Modification Agreement | ⟶

_____Thomila Smith_____
Thomila Smith – Borrower

_____ [Space below this line for Acknowledgement] _____

STATE OF ___Georgia___

COUNTY OF ___Cherokee___

On the ___6___ day of ___September___ in the year _2022_ before me, the undersigned, a Notary Public in and for said State, personally appeared <u>Thomila Smith</u>, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument.

WITNESS my hand and official seal.



_____Bernard Pang_____
(Signature)

Notary Public: ___Bernard Pang___
(Printed Name)

My commission expires: ___August 07, 2025___    (Notary Public Seal)
(Please ensure seal does not overlap any language or print)

BERNARD PANG
Notary Public, Georgia
Cherokee County
My Commission Expires
August 07, 2025

DEED B: 69509 P: 0098 03/29/2023 10:19 AM

**DO NOT WRITE BELOW THIS LINE.**

**********************************************************************

THIS SECTION IS FOR INTERNAL USE ONLY

Freedom Mortgage Corporation
By: Mortgage Connect Document Solutions, LLC, its attorney in fact

By: _____        Dated: **September 13th, 2022**
                                      _____

Name: **David Thao**
Title: **Attorney-in-Fact**

_____            _____
Witness Signature                    Witness Signature

**Maria Tovar-Segovia**              **Koob Lor**
Witness Printed Name                 Witness Printed Name

**September 13th, 2022**             **September 13th, 2022**
Witness Date                         Witness Date

_____[Space below this line for Acknowledgement]_____

STATE OF ____**Colorado**_____
COUNTY OF ___**Denver**_____

On **13th** day of **September** in the year **2022** before Me, **Rosalie Peyton**
Notary Public, personally appeared ___**David Thao**_____ , ___**Attorney in Fact**___
of Mortgage Connect Document Solutions, LLC, Attorney in Fact for Freedom Mortgage
Corporation, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____Notary Signature

_____Notary Public Printed Name Please Seal Here
      **Rosalie Peyton**

_____Notary Public Commission Expiration Date
      **May 26th, 2026**

**(Please ensure seal does not overlap any language or print)**

```
ROSALIE PEYTON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224021052
MY COMMISSION EXPIRES MAY 26, 2026
```

DEED B: 60508 P: 0008  03/29/2023 10:18 AM
23D018822 Page 8 of 9

# EXHIBIT A

The following described premises situated in the County of Gwinnett, State of Georgia, to-wit:

All that tract or parcel of land lying and being in Land Lot 120 of the 7th District of Gwinnett County, Georgia, being Lot 72, Block A, Sugarloaf Park, Unit Two, as per plat recorded at Plat Book 84, Page 67, Gwinnett County, Georgia Records, which plat is incorporated herein by reference and made a part hereof.

Being the same property as conveyed from Nathan Smith to Thomila Smith as set forth in Deed Instrument #0672021005128 dated 02/23/2021, recorded 02/24/2021, Gwinnett County, Georgia.

**DEED B: 60796 P: 00340**
09/06/2023 03:46 PM Pgs: 9 Fees: $74.50
ITax: $49.50
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: ███████████

---

[SPACE ABOVE RESERVED FOR RECORDER'S USE]

## CLERK'S COVER SHEET / HB 974 DISCLOSURES

Please Record and Return to:     Mortgage Connect LP
                                 April Poynter
After Recording, Return to:      600 Clubhouse Dr.
                                 Moon Twp., PA 15108

[Name, firm and address of filing party]

1.    Date of the Document: [    08/10/2023    ]

2.    Signatories to the Document: Grantor – [ Thornila Smith ]; Administrative Agent –
      [_____]

                                          Freedom Mortgage Corporation
                                          907 Pleasant Valley Ave
3.    Mailing Address of Grantee: [ Mount Laurel, NJ 08054 ]

4.    Map and Parcel ID Number: [ ███████████ ]

5.    Original Loan Amount: [    $305,250.00    ]

6.    Initial Maturity Date: [    01/01/2049    ]

7.    Intangible Recording Tax: [    $49.50    ]

8.    Intangible Recording Tax Exemption Authority (If Applicable):
            ███████████

NOTE: THIS COVER SHEET DOES NOT MODIFY THE TERMS OF THE ATTACHED
INSTRUMENT.

DEED B: 60796 P: 00341 09/06/2023 03:46 PM
2300059808 Page 2 of 9

Investor Loan #███████

**Recording Requested By:**
Freedom Mortgage Corporation
951 Yamato Road
Boca Raton, FL 33431

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect, LP
Attn: Loan Mod Processing Team
600 Clubhouse Drive
Moon Township, PA 15108
APN/Tax ID: █████████
Recording Number: █████████

This document was prepared by <u>Freedom Mortgage Corporation, Michele Rice, 10500 Kincaid
Drive, Suite 111, Fishers IN 46037-9764, (855) 690-5900</u>.

_____**Space Above This Line For Recording Data**_____
**Original Principal Amount: $305,250.00**          **Loan Number:** ████████
**Unpaid Principal Amount: $285,745.02**          FHA Case No.: ███████████
**New Principal Amount: $302,016.11**
**Consideration Amount (For Recording Purposes Only): $16,271.09**

Original Security Instrument recorded on Date **12/17/2018** in Book or Liber **56312**, at page(s)
**00701**, and/or as Document/Instrument Number _____, in the Records of **Gwinnett
County, GEORGIA**.

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") between **THOMILA SMITH, A MARRIED
WOMAN** whose address is 2626 HARMAN PARK CT, DULUTH, GA 30097 ("Borrower" or
"I"[1]) and **FREEDOM MORTGAGE CORPORATION** whose address is 907 Pleasant Valley
Avenue, Mount Laurel, NJ 08054 ("Lender"), is given on 08/10/2023, and amends and
supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), made
by **THOMILA SMITH, A MARRIED WOMAN** to **MERS AS NOMINEE FOR THE
FEDERAL SAVINGS BANK.** for **$305,250.00** and interest, dated **12/11/2018** and recorded on
Date **12/17/2018** in Book or Liber **56312**, at page(s) **00701**, and/or as Document/Instrument
Number _____, in the Records of **Gwinnett County, GEORGIA**, and (2) the Note
bearing the same date as and secured by the Security Instrument, which was entered into as
security for the performance of the Note and encumbers the real and personal property described

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as
"Borrower" or "I." For purposes of this document, words signifying the singular (such as
"Borrower" or "I") shall include the plural (such as "Borrowers" or "we") and vice versa where
appropriate.
Page 1

and defined in the Security Instrument as the "Property," located at **2626 HARMAN PARK CT DULUTH, GA 30097.** *See Exhibit A for Legal Description*

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information designed to help you understand the modified mortgage terms that are being offered to you. Lender is required to provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage in a timely manner to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 below continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents. If there is more than one borrower or mortgagor executing this document, each is referred to as "I". Words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1. **My Representations**. I certify, represent to Lender, and agree as follows:

    A. I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

    B. I am not a borrower on any other FHA-insured mortgage.

    C. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

    D. If I received a discharge in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the required subordinate mortgage loan (also called a Partial Claim Note and Security Instrument). I have reviewed and approved the terms of such subordinate loan.

    B. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

**C.** Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

**D.** The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred.

3. **The Modification.** If all of my representations in Section 1 above continue to be true and correct and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on 09/01/2023 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

**A.** The new Maturity Date will be 09/01/2063.

**B.** The new principal balance of my Note will be $302,016.11 (the "New Principal Balance"). In servicing your loan, the Bank may have incurred third-party fees or charges that were not included in the terms of this Agreement. If so, these fees and charges will appear on your monthly statement under "Fees and Charges." These fees and charges will not accrue interest or late fees. You may pay these fees and charges at any time. If not previously paid, you must pay these fees and charges at the earliest of (1) the date you sell or transfer an interest in the Property, (2) the date you pay the entire New Principal Balance, or (3) the Maturity Date.

**C.** I promise to pay the New Principal Balance, plus interest, to the order of Lender.

**D.** The annual interest rate on the New Principal Balance will be 7.375%, beginning 09/01/2023, both before and after any new default. This fixed interest rate will remain in effect until the principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

**E.** On 10/01/2023 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $2,945.69 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $1,959.64, plus the current required escrow payment of $986.05. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

**F.** I will be in default if I do not comply with the terms of the Modified Loan Documents.

4. **Additional Agreements.** Lender and I agree to the following:

Page 3

**A.** I accept the risks of entering into this Agreement. These risks include (but are not limited to)

    (1) The subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The subordinate lien may also make it more difficult to get additional subordinate lien financing.

    (2) My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

**B.** I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

**C.** All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender waived this requirement in writing.

**D.** This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

**E.** All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect and I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

**F.** The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

**G.** I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

**H.** I know that I am only entitled to loss mitigation terms that comply with the Program. Therefore, if Lender discovers any error in the terms of this Agreement or in the required subordinate mortgage loan, I authorize the Lender to advise me of the error. If I do not accept the corrected terms, at Lender's option, this Agreement becomes void and of no legal effect. If I accept the corrected terms, I will execute and promptly return to Lender the revised and additional documents that will (1) consummate the intended terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement"). If I do not sign and deliver a Corrected Agreement or any additional document required by Lender to comply with the Program, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I may not be eligible for the Program.

**I.** Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I consent to the disclosure of my Personal Information and the terms of this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Program, and (3) any HUD-certified housing counseling agency.

**J.** If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents").

I will deliver the Replacement Documents to Lender within ten days after I receive Lender's written request for such Replacement Documents.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered on the 28ᵗʰ day of August , 20 23 , in the presence of:

_____
Unofficial Witness Signature

Mason Truslove
Unofficial Witness Printed Name

**Sign here to execute Modification Agreement** ➡

_____
Thomila Smith – Borrower

_____ [Space below this line for Acknowledgement] _____

STATE OF Georgia

COUNTY OF Gwinnett

On the 28ᵗʰ day of August in the year 2023 before me, the undersigned, [X] a Notary Public [ ] an Online Notary Public, in and for said State, personally appeared [X] by physical presence [ ] by online notarization/use of audio/video communication technology Thomila Smith, personally known to me or proved to me on the basis of satisfactory evidence of identification to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they voluntarily executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument for its stated purpose.

Personally Known _____ OR Produced Identification Drivers License

Type of Identification Produced: Drivers License

WITNESS my hand and official seal.

Lisa Melzer
(Signature)

Notary Public: Lisa Melzer

My commission expires: October 23, 2023
(Printed Name)

(Notary Public Seal)
(Please ensure seal does not overlap any printed text)

**DO NOT WRITE BELOW THIS LINE.**
*******************************************************************************

THIS SECTION IS FOR INTERNAL USE ONLY

Freedom Mortgage Corporation
   By: Mortgage Connect, L.P., its attorney in fact

By: _Julie Chalmers_          Dated:
                               09/06/2023

Name: Julie Chalmers
Title: AVP, Manager – Scan Ship

_Kyle McKitrick_            _Aniyah Mays_
Witness Signature                Witness Signature

Kyle McKitrick                Aniyah Mays
Witness Printed Name          Witness Printed Name

9/06/23                      9/06/23
Witness Date                     Witness Date

[Space below this line for Acknowledgement]

STATE OF Pennsylvania
COUNTY OF Allegheny

On 06 day of September in the year 2023 before Me, Destinee Gallagher
Notary Public, personally appeared Julie Chalmers, AVP,Manager – Scan Ship
of Mortgage Connect, L.P., Attorney in Fact for Freedom Mortgage
Corporation, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Destinee Gallagher_ Notary Signature

Destinee Gallagher    Notary Public Printed Name Please Seal Here

April 12, 2027          Notary Public Commission Expiration Date

**(Please ensure seal does not overlap any language or print)**

Commonwealth Of Pennsylvania - Notary Seal
**Destinee Gallagher, Notary Public**
Allegheny County
My Commission Expires April 12, 2027
Commission Number 1433508

DEED B: 60796 P: 00368 09/06/2023 03:46 PM
2300592898 Pages 7 of 7

# EXHIBIT A

All that certain parcel of land situated in the County of Gwinnett, State of Georgia:

All that tract or parcel of land lying and being in Land Lot 120 of the 7th District of Gwinnett County, Georgia, being Lot 72, Block A, Sugarloaf Park, Unit two, as per plat recorded at Plat Book 84, Page 67, Gwinnett County, Georgia records, which plat is incorporated herein by reference and made a part hereof.

DEED B: 61188 P: 00870
05/10/2024 12:04 PM Pgs: 9 Fees: $100.19
ITax: $49.50 P: $24.75 I: $0.94
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 1526296988,7067927936

---

[SPACE ABOVE RESERVED FOR RECORDER'S USE]

**CLERK'S COVER SHEET / HB 974 DISCLOSURES**

Please Record and Return to:

After Recording, Return to:

Mortgage Connect, LP
Laurie Rux
600 Clubhouse Dr.
Moon Twp., PA 15108

[Name, firm and address of filing party]

1.    Date of the Document: [12/22/2023]

2.    Signatories to the Document: Grantor – **Thomila Smith**

3.    Mailing Address of Grantee: [ Freedom Mortgage Corporation
907 Pleasant Valley Ave
Mount Laurel, NJ 08054 ]

4.    Map and Parcel ID Number: [R7120 218]

5.    Original Loan Amount: [$305,250.00]

6.    Initial Maturity Date: [ 02/01/2064]

      **New Money - $16,277.04**

7.    Intangible Recording Tax: [ $49.50         ]

8.    Intangible Recording Tax Exemption Authority (If Applicable):
      Governmental Agency   560-11-8-.14(a)

NOTE: THIS COVER SHEET DOES NOT MODIFY THE TERMS OF THE ATTACHED
INSTRUMENT.

Investor Loan # ██████

**Recording Requested By:**
Freedom Mortgage Corporation
951 Yamato Road
Boca Raton, FL 33431

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect, LP
Attn: Loan Mod Processing Team
600 Clubhouse Drive
Moon Township, PA 15108
APN/Tax ID: ██████
Recording Number: ██████

This document was prepared by Freedom Mortgage Corporation, Michele Rice, 10500 Kincaid Drive, Suite 111, Fishers IN 46037-9764, (855) 690-5900.

Maturity Date: _____

_____Space Above This Line For Recording Data_____
**Original Principal Amount:** $305,250.00                    Loan Number: ██████
**Unpaid Principal Amount:** $301,865.19                    FHA Case No.: ██████
**New Principal Amount:** $318,142.23
**Consideration Amount (For Recording Purposes Only):** $16,277.04

Original Security Instrument recorded on Date **12/17/2018** in Book or Liber **56312**, at page(s) **00701**, and/or as Document/Instrument Number _____, in the Records of **Gwinnett County, GEORGIA**.

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") between **THOMILA SMITH, A MARRIED WOMAN** whose address is 2626 HARMAN PARK CT, DULUTH, GA 30097 ("Borrower" or "I"[1]) and **FREEDOM MORTGAGE CORPORATION** whose address is 951 Yamato Road, Boca Raton, FL 33431 ("Lender"), is given on 12/22/2023, and amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), made by **THOMILA SMITH, A MARRIED WOMAN** to **MERS AS GRANTEE, AS NOMINEE FOR THE FEDERAL SAVINGS BANK.** for **$305,250.00** and interest, dated **12/11/2018** and recorded on Date **12/17/2018** in Book or Liber **56312**, at page(s) **00701**, and/or as Document/Instrument Number _____, in the Records of **Gwinnett County, GEORGIA**, and (2) the Note bearing the same date as and secured by the Security Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "Borrower" or "I." For purposes of this document, words signifying the singular (such as "Borrower" or "I") shall include the plural (such as "Borrowers" or "we") and vice versa where appropriate.
Page 1 of 7

and defined in the Security Instrument as the "Property," located at **2626 HARMAN PARK CT DULUTH, GA 30097.** *See Exhibit A for Legal Description*

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information designed to help you understand the modified mortgage terms that are being offered to you. Lender is required to provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage in a timely manner to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 below continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents. If there is more than one borrower or mortgagor executing this document, each is referred to as "I". Words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1. **My Representations.** I certify, represent to Lender, and agree as follows:

   A. I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

   B. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

   C. I am not a borrower on any other FHA-insured mortgage.

   D. If I received a discharge in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. Prior to the Modification Effective Date as set forth in Section 3 below, if Lender determines that any of my representations in Section 1 above are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents.

   B. The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred. In addition, Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

Page 2 of 7

3. **The Modification.** If all of my representations in Section 1 above continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on 02/01/2024 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

A. The new Maturity Date will be 02/01/2064.

B. As of the Modification Effective Date, the new principal balance of my Note will be \$318,142.23 (the "New Principal Balance"). In servicing your loan, the Lender may have incurred third-party fees or charges that were not included in the terms of this Agreement. If so, these fees and charges will appear on your monthly statement under "Fees and Charges." These fees and charges will not accrue interest or late fees. You may pay these fees and charges at any time. If not previously paid, you must pay these fees and charges at the earliest of (1) the date you sell or transfer an interest in the Property, (2) the date you pay the entire New Principal Balance, or (3) the Maturity Date.

C. I promise to pay the New Principal Balance, plus interest, to the order of Lender.

D. Interest at the fixed rate of 7.125% will begin to accrue on the New Principal Balance as of 02/01/2024 and my first new monthly payment on the New Principal Balance will be due on 03/01/2024. My fully amortizing payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|------------------------------------------------|-------------------------------------------|------------------------|-------------------|----------------------------|
| 40 | 7.125% | \$2,005.99 | \$1,031.44, may adjust periodically | \$3,037.43, may adjust periodically | 03/01/2024 | 480 |

\* The escrow payments may be adjusted periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The total monthly payment amount shown does not include the cost for any optional products that may be on the mortgage loan.

The terms in this Section 3.D. supersede any provisions to the contrary in the Loan Documents, including (but not limited to) provisions for an adjustable- or step-interest rate.

E. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

Page 3 of 7

**F.** The interest rate set forth in Section 3.D. above shall apply even in the event of default and if the Loan Documents permitted a default rate of interest.

**4.  Additional Agreements.** Lender and I agree to the following:

**A.** I accept the risks of entering into this Agreement. These risks include (but are not limited to):

  a.  My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

**B.** I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office (or other recordation office) to allow for recording if and when recording becomes necessary for Lender.

**C.** All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing. This Agreement may be executed in separate counterparts, each of which shall be deemed an original.

**D.** This Agreement supersedes the terms of any modification, forbearance, trial period plan, or loan workout plan that I previously entered into with Lender.

**E.** All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect and I will comply with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may periodically change in accordance with the terms of my Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

**F.** The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

**G.** On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only as permitted under FHA guidelines. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

**H.** On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

**I.** I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement (a "Corrected Agreement"). If Lender discovers any error in the terms of this Agreement, I authorize the Lender to advise me of the error. If I do not accept the terms of the Corrected Agreement, Lender may declare this Agreement void and of no legal effect. If I sign a Corrected Agreement, Lender will provide a copy of such Agreement to me. If I elect not to sign such Corrected Agreement, at Lender's sole option, (a) the terms of the original Loan Documents shall continue in full force and effect and (b) the terms of the original Loan Documents will not be modified by this Agreement, in which case I may not be eligible for the Program.

**J.** Lender may collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I understand and consent to the disclosure of my Personal Information and the terms of the trial period plan and this Agreement by Lender to (1) any government entity that regulates Lender; (2) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first-lien or subordinate-lien (if applicable) mortgage loan(s); (3) companies that perform support services for the FHA and (4) any HUD-certified housing counseling agency.

**K.** If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this section shall be referred to as the "Replacement Documents". I will deliver the Replacement Documents within ten days after I receive Lender's written request for such replacement.

By SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed, sealed, and delivered this Security Instrument on the _10 th_ day of ___January___, 20_24_, in the presence of:

_____
Unofficial Witness Signature

Athziry Vargas
_____
Unofficial Witness Printed Name

**Sign here to execute**
**Modification Agreement**

Thomila Smith
(Must be signed exactly as printed)

_01_ / _18_ / _2024_
Signature Date (MM/DD/YYYY)

_____ *[Space below this line for Acknowledgement]* _____

STATE OF _GA_

COUNTY OF _Cobb_

On the _10th_ day of _January_ in the year _24_ before me, the undersigned, Notary Public (or [ ] if an Online Notary Public), in and for said State, personally appeared by physical presence (or [ ] if by online notarization/use of audio/video communication technology) Thomila Smith, personally known to me or proved to me on the basis of satisfactory evidence of identification to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they voluntarily executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument for its stated purpose.

Personally Known _____ OR Produced Identification _X_

Type of Identification Produced: _GOvID_

WITNESS my hand and official seal.

_____
(Signature)

Notary Public: _Kameron Austin_
_____
(Printed Name)

My commission expires: _6/15/26_

(Notary Public Seal)
(Please ensure seal does not overlap any language or print)

KAMERON AUSTIN
COMMISSION EXPIRES
NOTARY
PUBLIC
JUNE 15, 2026
COBB COUNTY, GEORGIA

Page 6 of 7

**DO NOT WRITE BELOW THIS LINE.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Freedom Mortgage Corporation
By: Mortgage Connect, L.P., its attorney in fact

By: _____          Dated:
                                        05/08/2024

Name: Garrett Handley
Title: AVP, Scan Ship

_____          _____
Witness Signature                      Witness Signature

Oliver Burdine                         Rebecca Croyle
Witness Printed Name                   Witness Printed Name

5/8/2024                               5/8/24
Witness Date                           Witness Date

[Space below this line for Acknowledgement]

STATE OF Pennsylvania
COUNTY OF Allegheny

On  8  day of May in the year 2024 before Me, Lauren Morgan
Notary Public, personally appeared Garrett Handley, AVP, Scan Ship
of Mortgage Connect, L.P., Attorney in Fact for Freedom Mortgage
Corporation, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

Lauren Morgan _____ Notary Public Printed Name  Please Seal Here

8/21/2027 _____ Notary Public Commission Expiration Date

**(Please ensure seal does not overlap any language or print)**

Commonwealth Of Pennsylvania - Notary Seal
**Lauren Morgan, Notary Public**
Allegheny County
My Commission Expires August 21, 2027
Commission Number 1437723

DEED B: 61188 P: 00878 05/10/2024 12:04 PM
24D030540 Page 9 of 9

# EXHIBIT A

All that certain parcel of land situated in the County of Gwinnett, State of Georgia:

All that tract or parcel of land lying and being in Land Lot 120 of the 7th District of Gwinnett County, Georgia, being Lot 72, Block A, Sugarloaf Park, Unit two, as per plat recorded at Plat Book 84, Page 67, Gwinnett County, Georgia records, which plat is incorporated herein by reference and made a part hereof.

6626] [F_1__0]

Received Date: 9/19/2022

# ORIGINAL

## PROMISSORY NOTE

09/01/2022

### THOMILA SMITH

2626 HARMAN PARK CT DULUTH, GA 30097

1.      PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development, and its successors and assigns.

2.      BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of twenty-two thousand three hundred ninety-one and 37/100 Dollars (U.S. 22,391.37), to the order of the Lender.

3.      PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

4.      MANNER OF PAYMENT

(A)     Time

On, September 1, 2062 or, if earlier, when the first of the following events occurs:

(i) Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated, or

(iii) The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

(iv) The property is not occupied by the purchaser as his or her principal residence.

**Partial Claim**

PACKAGE_FMC_FI
Page 1 of 2

Received Date: 9/19/2022

(B)    Place

Payment shall be made at the FHA, Attention: Security Held Loan Servicing, 2000 N Classen Blvd #3200, Oklahoma City, OK 73106 or any such other place as Lender may designate in writing by notice to Borrower.

## 5.    BORROWER'S RIGHT TO REPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.    WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Sign here to execute
Promissory Note

**THOMILA SMITH**
(Must be signed exactly as printed)

SEP 1 5 2022

Partial Claim

ITax: $0.00
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 1526296988,7067927936

03/29/2023 10:18 AM Pgs: 6 Fees: $25.00

**Recording Requested By:**
Freedom Mortgage Corporation
907 Pleasant Valley Avenue
Mount Laurel, NJ 08054

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect Document Solutions
6860 North Argonne Street, Unit A
Denver, CO 80249

This document was prepared by: Freedom Mortgage Corporation, Michele Rice, 10500 Kincaid Drive, Suite 111, Fishers IN 46037-9764, (855) 690-5900

. **Tax Exempt - Governmental Agency**

_____**Space Above This Line For Recording Data**_____

### SUBORDINATE SECURITY DEED

THIS SUBORDINATE SECURITY DEED ("Security Instrument") is given on August 19, 2022.

The Mortgagor is **THOMILA SMITH, A MARRIED WOMAN**

Whose address is 2626 HARMAN PARK CT DULUTH, GA 30097 ("Borrower").

This Security Instrument is given to the Secretary of Housing and Urban Development, its successors and assigns whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of _twenty-two thousand three hundred ninety-one and 37/100 Dollars (U.S. 22,391.37). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on September 1, 2062.

This SECURITY INSTRUMENT secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 2 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with the power of sale the following described property located in **Gwinnett** County, State of GEORGIA which has the address of 2626 HARMAN PARK CT DULUTH, GA 30097, ("Property Address") more particularly described as follows: *See Exhibit A for Legal Description*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Partial Claim

PACKAGE_FMC_FH,
Page 1 of 6

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1.    **PAYMENT OF PRINCIPAL.** Borrower shall pay when due the principal of the debt evidenced by the Note.

2.    **BORROWER NOT RELEASED; FORBEARANCE BY LENDER NOT A WAIVER.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3.    **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4.    **NOTICES.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5.    **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

PACKAGE_FMC_1
Page 2 of 6

Partial Claim

DEED B: 60508 P: 00076 03/29/2023 10:18 AM

6.    **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7.    **ACCELERATION; REMEDIES.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument unless applicable law provides otherwise. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice further shall inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Lender to the extent permitted by applicable law shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including without limitation reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender without further demand on Borrower shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise, and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this Section 7, Borrower or any person holding possession of the Property through Borrower immediately shall surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

8.    **RELEASE.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by applicable law.

9.    **WAIVER OF HOMESTEAD.** Borrower waives all right of homestead exemption in the Property.

10.    **ASSUMPTION NOT A NOVATION.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

Partial Claim

PACKAGE_FM
Page 3 of 6

11.    **SECURITY DEED.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title and not as a mortgage and is intended to secure the payment of all sums secured by this Security Instrument.

12.    **PROTECTION OF LENDER'S INTEREST IN THE PROPERTY AND RIGHTS UNDER THIS SECURITY INSTRUMENT.** If (a) Borrower fails to perform the covenants and agreements contained in the Security Instrument, (b) there is a legal proceeding that significantly might affect lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including without limitation protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions may include without limitation: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; (c) paying reasonable attorneys' fees to protect Lender's interest in the Property and/or rights under this Security Instrument, including without limitation Lender's secured position in a bankruptcy proceeding. Securing the Property includes without limitation making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section, Lender does not have to do so and is not under any duty or obligation to do so. Borrower and Lender agree that Lender incurs no liability for not taking any or all actions authorized under this Section.

Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

**Partial Claim**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered on the 6 day of September, 20 22, in the presence of:

_Nathan Smith_
Unofficial Witness

_Nathan Smith_
Unofficial Witness – Printed Name

**Sign here to execute Subordinate Security Instrument** ➡

_Thomila Smith_
Thomila Smith – Borrower

_____[Space below this line for Acknowledgement]_____

STATE OF ____Georgia____

COUNTY OF ____Cherokee____

On the __6__ day of __September__ in the year __2022__ before me, the undersigned, a Notary Public in and for said State, personally appeared Thomila Smith, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument.

WITNESS my hand and official seal.

_Bernard Pang_
(Signature)

Notary Public: _Bernard Pong_

My commission expires: _August 07, 2025_ (Notary Public Seal)
(Please ensure seal does not overlap any language or print)

BERNARD PANG
Notary Public, Georgia
Cherokee County
My Commission Expires
August 07, 2025

Partial Claim

PACKAGE_FI
Page 5 of 6

DEED B: 60508 P: 00079 03/29/2023 10:18 AM

# EXHIBIT A

The following described premises situated in the County of Gwinnett, State of Georgia, to-wit:

All that tract or parcel of land lying and being in Land Lot 120 of the 7th District of Gwinnett County, Georgia, being Lot 72, Block A, Sugarloaf Park, Unit Two, as per plat recorded at Plat Book 84, Page 67, Gwinnett County, Georgia Records, which plat is incorporated herein by reference and made a part hereof.

Being the same property as conveyed from Nathan Smith to Thomila Smith as set forth in Deed Instrument #0672021005128 dated 02/23/2021, recorded 02/24/2021, Gwinnett County, Georgia.

**Partial Claim**

Received Date: 1/19/2022

ORIGINAL

# PROMISSORY NOTE

October 22, 2021

**THOMILA SMITH**

2626 HARMAN PARK CT DULUTH, GA 30097

1.    PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development, and its successors and assigns.

2.    BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of fifty-two thousand four hundred forty-seven and 39/100 Dollars (U.S. 52,447.39), to the order of the Lender.

3.    PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

4.    MANNER OF PAYMENT

(A)    Time

On, January 1, 2049 or, if earlier, when the first of the following events occurs:

(i) Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated, or

(iii) The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

(iv) The property is not occupied by the purchaser as his or her principal residence.

**Partial Claim**

**Received Date: 1/19/2022**

(B)     Place

Payment shall be made at the FHA, Attention: Security Held Loan Servicing, 2000 N Classen Blvd #3200, Oklahoma City, OK 73106 or any such other place as Lender may designate in writing by notice to Borrower.

5.      BORROWER'S RIGHT TO REPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6.      WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

7.      OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**THOMILA SMITH** – Printed Name

Borrower Signature



RECEIVED

NOV 2 9 2021

BY: ...........................

**Partial Claim**

Received Date: 8/25/2022

**DEED B: 59487 P: 00105**
**12/07/2021 03:01 PM Pgs: 6 Fees: $25.00**
**ITax: $0.00**
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 1526296988,7067927936

**Recording Requested By:**
Freedom Mortgage Corporation
907 Pleasant Valley Avenue
Mount Laurel, NJ 08054

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect Document Solutions
6860 North Argonne Street, Unit A
Denver, CO 80249

This document was prepared by: Freedom Mortgage Corporation,

**Tax Exempt - Governmental Agency**

_____Space Above This Line For Recording Data_____

## SUBORDINATE SECURITY DEED

THIS SUBORDINATE SECURITY DEED ("Security Instrument") is given on 22nd day
of October, 2021.

#### The Mortgagor **THOMILA SMITH, A MARRIED WOMAN**

Whose address is 2626 HARMAN PARK CT DULUTH, GA 30097 ("Borrower"). This Security
Instrument is given to the Secretary of Housing and Urban Development, its successors and
assigns whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower
owes Lender the principal sum of fifty-two thousand four hundred forty-seven and 39/100 Dollars
(U.S. 52,447.39). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on
January 1, 2049.

This SECURITY INSTRUMENT secures to Lender: (a) the repayment of the debt evidenced by
the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other
sums, advanced under Paragraph 2 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender,
with the power of sale the following described property located in **Gwinnett** County, State of
GEORGIA which has the address of 2626 HARMAN PARK CT DULUTH, GA 30097,
("Property Address") more particularly described as follows: *See Exhibit A for Legal Description*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements
and additions shall also be covered by this Security Instrument. All of the foregoing is referred to
in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby
conveyed and has the right to mortgage, grant and convey the Property and that the Property is

**Partial Claim**

unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1.      **PAYMENT OF PRINCIPAL.** Borrower shall pay when due the principal of the debt evidenced by the Note.

2.      **BORROWER NOT RELEASED; FORBEARANCE BY LENDER NOT A WAIVER.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3.      **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4.      **NOTICES.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5.      **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**Partial Claim**

PACKAGE_FI
Page 2 of 6

6. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

7. **ACCELERATION; REMEDIES.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument unless applicable law provides otherwise. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice further shall inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Lender to the extent permitted by applicable law shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including without limitation reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender without further demand on Borrower shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise, and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this Section 7, Borrower or any person holding possession of the Property through Borrower immediately shall surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

8. **RELEASE.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by applicable law.

9. **WAIVER OF HOMESTEAD.** Borrower waives all right of homestead exemption in the Property.

**Partial Claim**

PACKAGE_FM
Page 3 of 6

DEED B: 59487 P: 00108 12/07/2021 03:01 PM
21D168876 Page 4 of 6

10. **ASSUMPTION NOT A NOVATION.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

11. **SECURITY DEED.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title and not as a mortgage and is intended to secure the payment of all sums secured by this Security Instrument.

12. **PROTECTION OF LENDER'S INTEREST IN THE PROPERTY AND RIGHTS UNDER THIS SECURITY INSTRUMENT.** If (a) Borrower fails to perform the covenants and agreements contained in the Security Instrument, (b) there is a legal proceeding that significantly might affect lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including without limitation protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions may include without limitation: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; (c) paying reasonable attorneys' fees to protect Lender's interest in the Property and/or rights under this Security Instrument, including without limitation Lender's secured position in a bankruptcy proceeding. Securing the Property includes without limitation making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section, Lender does not have to do so and is not under any duty or obligation to do so. Borrower and Lender agree that Lender incurs no liability for not taking any or all actions authorized under this Section.

Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

**Partial Claim**

DEED B: 59487 P: 00109  12/07/2021 03:01 PM
21D168876  Page 5 of 6

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered on the 19 day of

Nuvember, 20 21, in the presence of:

Unofficial Witness

Julie West - Reichelderfer
Unofficial Witness – Printed Name

Thomila Smith – Borrower

_____ *[Space below this line for Acknowledgement]* _____

STATE OF Georgia

COUNTY OF Cherokee

On the 19 day of November in the year 2021 before me, the undersigned, a Notary Public in and for said State, personally appeared Thomila Smith, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument.

WITNESS my hand and official seal.

(Signature)                                         (Notary Public Seal)
                              Please ensure seal does not overlap any language or print)
Notary Public: Bernard Pang
                                   (Printed Name)
Notary commission expires: August 07, 2025

BERNARD PANG
Notary Public, Georgia
Cherokee County
My Commission Expires
August 07, 2025

Partial Claim

PACKAGE_FN
Page 5 of 6

**Received Date: 8/25/2022**

**DEED B: 59487 P: 00110  12/07/2021 03:01 PM**
**21D168876  Page 6 of 6**

# EXHIBIT A

The following described premises situated in the County of Gwinnett, State of Georgia, to-wit:

All that tract or parcel of land lying and being in Land Lot 120 of the 7th District of Gwinnett County, Georgia, being Lot 72, Block A, Sugarloaf Park, Unit Two, as per plat recorded at Plat Book 84, Page 67, Gwinnett County, Georgia Records, which plat is incorporated herein by reference and made a part hereof.

Being the same property as conveyed from Nathan Smith to Thomila Smith as set forth in Deed Instrument #0672021005128 dated 02/23/2021, recorded 02/24/2021, Gwinnett County, Georgia.

Partial Claim

Recieved by ISN

Loan Number:

FHA Case No.

# ORIGINAL

## PROMISSORY NOTE

08/10/2023

**THOMILA SMITH**

2626 HARMAN PARK CT DULUTH, GA 30097

1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development, and its successors and assigns.

2.  BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of fourteen thousand nine hundred sixty-seven and 75/100 Dollars (U.S. 14,967.75), to the order of the Lender.

3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

4.  MANNER OF PAYMENT

    (A)     Time

On, September 1, 2063 or, if earlier, when the first of the following events occurs:

(i)     Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii)     The maturity date of the primary Note has been accelerated, or

**Partial Claim**

Recieved by ISN

(iii)  The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary

(B)  Place

Payment shall be made at the FHA, Attention: Security Held Loan Servicing, 2000 N Classen Blvd #3200, Oklahoma City, OK 73106 or any such other place as Lender may designate in writing by notice to Borrower.

5.  BORROWER'S RIGHT TO REPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

7.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**Sign here to execute Promissory Note** ➡ _____

**THOMILA SMITH**
(Must be signed exactly as printed)

**Partial Claim**

Page 2 of 2

Recieved by ISN

DEED B: 60796 P: 00332
09/06/2023 03:46 PM Pgs: 8 Fees: $25.00
ITax: $0.00
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 1526296988,7067927936

_____

[SPACE ABOVE RESERVED FOR RECORDER'S USE]

**CLERK'S COVER SHEET / HB 974 DISCLOSURES**

Please Record and Return to:        Mortgage Connect, LP
                                    April Poynter
After Recording, Return to:         600 Clubhouse Dr.
                                    Moon Twp., PA 15108
[Name, firm and address of filing party]

1.  Date of the Document: [ 08/10/2023 ]

2.  Signatories to the Document: Grantor – [ Thomila Smith ]; Administrative Agent –
    [_____]

                                    Secretary of Housing and Urban Development
                                    451 Seventh St SW
3.  Mailing Address of Grantee: [ Washington, DC 20410 ]

4.  Map and Parcel ID Number: [ R7120 218 ]

5.  Original Loan Amount: [ $14,967.75 ]

6.  Initial Maturity Date: [ 09/01/2063 ]

7.  Intangible Recording Tax: [ $0.00 ]

8.  Intangible Recording Tax Exemption Authority (If Applicable):
    Governmental Agency   560-11-8-.14(a)

NOTE: THIS COVER SHEET DOES NOT MODIFY THE TERMS OF THE ATTACHED
INSTRUMENT.

Recieved by ISN

**Recording Requested By:**
Freedom Mortgage Corporation
951 Yamato Road
Boca Raton, FL 33431

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect, LP
Attn: Loan Mod Processing Team
600 Clubhouse Drive
Moon Township, PA 15108
APN/Tax ID
Recording Number:

This document was prepared by: <u>Freedom Mortgage Corporation, Michele Rice 10500 Kincaid Drive</u>
<u>Suite 111, Fishers IN, 46037-9764 (855)690-5900</u>
**Tax Exempt - Governmental Agency**

_____**Space Above This Line For Recording Data**_____

FHA Case No.

### SUBORDINATE SECURITY DEED

THIS SUBORDINATE SECURITY DEED ("Security Instrument") is given on <u>August</u>
<u>10, 2023.</u>

The Mortgagor is **THOMILA SMITH, A MARRIED WOMAN**

Whose address is <u>2626 HARMAN PARK CT DULUTH, GA 30097</u> ("Borrower").

This Security Instrument is given to the Secretary of Housing and Urban Development, its
successors and assigns whose address is 451 Seventh Street, SW, Washington, DC 20410
("Lender"). Borrower owes Lender the principal sum of <u>fourteen thousand nine hundred sixty-</u>
<u>seven and 75/100 Dollars (U.S. 14,967.75)</u>. This debt is evidenced by Borrower's note dated the
same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier,
due and payable on <u>September 1, 2063.</u>

This SECURITY INSTRUMENT secures to Lender: (a) the repayment of the debt evidenced by
the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other
sums, advanced under Paragraph 2 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender,

**Partial Claim**

Page 1 of 7

Recieved by ISN

with the power of sale the following described property located in **Gwinnett** County, State of
GEORGIA which has the address of 2626 HARMAN PARK CT DULUTH, GA 30097,
("Property Address") more particularly described as follows: ***See Exhibit A for Legal Description***

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements
and additions shall also be covered by this Security Instrument. All of the foregoing is referred to
in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby
conveyed and has the right to mortgage, grant and convey the Property and that the Property is
unencumbered, except for encumbrances of record. Borrower warrants and will defend generally
the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and
non-uniform covenants with limited variations by jurisdiction to constitute a uniform security
instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1.      **PAYMENT OF PRINCIPAL.** Borrower shall pay when due the principal of the debt
evidenced by the Note.

2.      **BORROWER NOT RELEASED; FORBEARANCE BY LENDER NOT A
WAIVER.** Extension of the time of payment of the sums secured by this Security Instrument
granted by Lender to any successor in interest of Borrower shall not operate to release the liability
of the original Borrower or Borrower's successor in interest. Lender shall not be required to
commence proceedings against any successor in interest or refuse to extend time for payment or
otherwise modify amortization of the sums secured by this Security Instrument by reason of any
demand made by the original Borrower or Borrower's successors in interest. Any forbearance by
Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any
right or remedy.

3.      **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY;
CO-SIGNERS.** The covenants and agreements of this Security Instrument shall bind and benefit
the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be
joint and several. Any Borrower who co-signs this Security Instrument but does not execute the
Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that
Borrower's interest in the Property under the terms of this Security Instrument; (b) is not
personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that
Lender and any other Borrower may agree to extend, modify, forbear or make any
accommodations with regard to the term of this Security Instrument or the Note without that
Borrower's consent.

4.      **NOTICES.** Any notice to Borrower provided for in this Security Instrument shall be
given by delivering it or by mailing it by first class mail unless applicable law requires use of
another method. The notice shall be directed to the Property Address or any other address

Partial Claim

Recieved by ISN

Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5.      **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6.      **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7.      **ACCELERATION; REMEDIES.**   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument unless applicable law provides otherwise. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice further shall inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Lender to the extent permitted by applicable law shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including without limitation reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender without further demand on Borrower shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death

**Partial Claim**

Recieved by ISN

or otherwise, and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this Section 7, Borrower or any person holding possession of the Property through Borrower immediately shall surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

8.    **RELEASE.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by applicable law.

9.    **WAIVER OF HOMESTEAD.** Borrower waives all right of homestead exemption in the Property.

10.   **ASSUMPTION NOT A NOVATION.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

11.   **SECURITY DEED.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title and not as a mortgage and is intended to secure the payment of all sums secured by this Security Instrument.

12.   **PROTECTION OF LENDER'S INTEREST IN THE PROPERTY AND RIGHTS UNDER THIS SECURITY INSTRUMENT.** If (a) Borrower fails to perform the covenants and agreements contained in the Security Instrument, (b) there is a legal proceeding that significantly might affect lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including without limitation protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions may include without limitation: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; (c) paying reasonable attorneys' fees to protect Lender's interest in the Property and/or rights under this Security Instrument, including without limitation Lender's secured position in a bankruptcy proceeding. Securing the Property includes without limitation making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section, Lender does not have to do so and is not under any duty or obligation to do so. Borrower and Lender agree that Lender incurs no liability for not taking any or all actions authorized under this Section.

Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest upon notice from Lender to Borrower requesting payment.

**Partial Claim**

Recieved by ISN

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

**Partial Claim**

Recieved by ISN

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed, sealed, and delivered this Security Instrument on the ___28ᵗʰ___ day of ___August___, 20 _23_, in the presence of:

_____
Unofficial Witness Signature

Maori Toureux
Unofficial Witness Printed Name

**Sign here to execute Subordinate Security Instrument**

_Thomila Smith_ — Borrower

_____[Space below this line for Acknowledgement]_____

STATE OF ___Georgia___

COUNTY OF ___Gwinnett___

On the ___28ᵗʰ___ day of ___August___ in the year ___2023___ before me, the undersigned, [x] a Notary Public [ ] an Online Notary Public, in and for said State, personally appeared [X] by physical presence [ ] by online notarization/use of audio/video communication technology _Thomila Smith_, personally known to me or proved to me on the basis of satisfactory evidence of identification to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they voluntarily executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument for its stated purpose.

Personally Known _____ OR Produced Identification __X__

Type of Identification Produced: ___Drivers License___

WITNESS my hand and official seal.

___Lisa Melzer___
(Signature)

Notary Public: ___Lisa Melzer___
(Printed Name)

My commission expires: ___October 23 2023___
(Notary Public Seal)

(Please ensure seal does not overlap any language or seal of county)

**Partial Claim**

Page 6 of 7

Recieved by ISN

# EXHIBIT A

All that certain parcel of land situated in the County of Gwinnett, State of Georgia:

All that tract or parcel of land lying and being in Land Lot 120 of the 7th District of Gwinnett County, Georgia, being Lot 72, Block A, Sugarloaf Park, Unit two, as per plat recorded at Plat Book 84, Page 67, Gwinnett County, Georgia records, which plat is incorporated herein by reference and made a part hereof.

**Partial Claim**